Good morning, Your Honors. May it please the Court, my name is Padrigaine Brown and I represent the plaintiff appellant, Zach Hillesheim, in this matter. Before the Court today are two interrelated issues. One is whether or not Mr. Hillesheim's claims under the ADA were mooted by Holiday's changes after the initiation of the suit, and the second deals with whether or not nominal damages are allowed under the ADA, and if so, whether or not that prevents a finding of mootness. If the Court is to rule in favor of Mr. Hillesheim regarding the mootness issue, it does not need to reach the issue of nominal damages at this time because the case would need to go back down to the district court. This case is somewhat similar to another case where two of the judges on this panel were part of the opinion, Davis v. Anthony's, and it comes down to what is sufficient to put a defendant on notice that a particular architectural barrier is within the scope of the complaint. So were the curb ramp flares, was that problem in existence at the time of the complaint? The curb ramp was not replaced, so yes, the curb ramp flares, the excessive slope was present. However, because there was no accessible route, there's no way for Mr. Hillesheim or anyone to know whether or not that matters. So to help me with this accessible route, it feels like that's one phrase or definition that the parties disagree on. I think if I understand your argument, at least in part, is that the curb ramp flares are a component or a part of the accessible route. Do I understand that correctly? So the curb ramp flares are a subset of the curb ramp, and the curb ramp itself is part of the accessible route. So you need a proper curb ramp to get an accessible route. So the counter from opposing counsel is that somehow the curb ramp flares are accepted. Help me understand what that means. So the discussion of what is part of the accessible route, part of this has to do with the change in standards from the 1991 standards to the 2010 standards. So what previously was allowed for an accessible route is that the curb ramp flares themselves could be part of the normal path of travel for an individual in a wheelchair. So from a practical standpoint, if you were going down the sidewalk and there was a curb ramp and you needed to go down, over, and up, you could go across the curb ramp flares as long as they didn't have a slope greater than 1 to 12. And that would be if there was not a space at the top of the curb ramp where you could bypass those flares. So you didn't have to have a landing at the top where somebody, if they're going the opposite direction of the curb ramp, could go past without going over bumps, down, and back up. In the 2010 standards, they changed that so that, except for in buildings that had been previously built, you have to have a landing at the top of that curb ramp flare so that if, because as you all know that curb ramps frequently cut into the sidewalk and people go in the opposite direction of where it's going. And the idea is that you have to have an accessible route that goes around the curb ramp and doesn't go over the flares when you're going in the opposite direction of that curb ramp. So while it's true it says that curb ramp flares are not part of the accessible route, they're not talking about in this type of instance where you're going in the direction up the curb ramp, there's still requirements for what those curb ramp flares have and what they must meet. So you're saying it is still part of an accessible route. Yes, because it's part of a curb ramp, which is 406, there's an umbrella section 406 which states what is necessary for a compliant curb ramp. And that includes what is necessary for curb ramp flares. What do you do with 402.2 where it says curb ramps excluding the flared sides? Yes, and that's what I was talking about. As in the direction of travel cannot be over the curb ramps for the accessible route. And that's what the change is from 91 to 2010. It's not saying that the curb ramps, you don't, because if you say that the curb ramps are not part of the accessible route in the manner that you're saying, Just the flared sides. Yeah, the flared sides aren't, then there shouldn't be any regulations with respect to it, because what would the point be? Why would you regulate what the slope of the curb ramp flares are if it's not attached to the accessible route? And while this case wasn't appealed, there was a district court case in the District of Minnesota, and I'm blanking on the name, where there was a question about whether or not it's supposed to be the primary path of travel for an individual in a wheelchair. They serve other functions, even if it is not the primary goal for an individual in the wheelchair to travel over those on their path to and from the exit. 402 is the more general provision, though, right? Of what is an accessible route? So, Chapter 4 in general deals with accessible routes. Yeah, but 402 is the second section. You know it better than I do. But it's the second section. It appears more general in terms of saying that accessible routes just exclude the flared sides. Right, but then 406, which is labeled curb ramps, has a subsection for the curb ramp flares. So, to be a curb ramp which complies with 406, you also have to comply with the Your complaint doesn't have 406.3, right? That is correct. Okay, go ahead. So, what the question is, is how specific must the complaint be to put somebody on notice of a particular problem? So, in this instance, how the store is set up, there were multiple possibilities of how Holiday would fix the problem with their accessible route. And it is possible that they could have fixed it without going over that ramp. They could have made the accessible route from the door past the front of the building to the ramp that goes to the entrance, as one example of another way that this could have been fixed. That would not have involved the curb ramp? And then that would not have involved the curb ramp flare, and they would have potentially had an accessible route, assuming there were other problems with that route. But that route wasn't tested because the one they presented was the one with the curb ramp flare. So, their assertion is, this is our accessible route. We come down this curb. You come out of the door, you come directly down this curb into a marked up aisle to get back to your car. So, this is their assertion, this is what my accessible route is that moots your claim, saying there's no accessible route. Our argument in response is, well, fine, if that's what you want to say, that's your accessible route. It's not accessible because it doesn't meet all the requirements in Chapter 4 with respect to accessible routes. Specifically, the curb ramp doesn't comply with all components of 406. And, although there's no specific citation to 406.3, it says multiple times that my client desires an accessible route. It's at paragraph 24.B of the complaint. It specifically says there's no accessible route connecting the store exit to the marked spaces. And then in paragraph 25, which is more of a catch-all provision, it makes clear, the intention of that paragraph is to help make clear what Mr. Hilsheim is looking for with respect to accessible parking spaces and accessible routes. And that's when he cites the 406. And these are changes that were made to this panel affirmed, where it was very specific that Ms. Davis is asking, says specifically that there was no, there wasn't appropriate striping, and she cited specifically to Section 502.2 about striping. And she was not talking, and it didn't say at any point that she was looking for an overall accessible space. So when we argued that it needed to meet 502.4, this court found that there wasn't sufficient notice. But this time it says, I want a fully accessible parking space, and I want a fully accessible route. And the provisions of, and the provisions such as 406, which deals with curb ramps, are called out. And I guess it comes down to... When was the amended, when was the Davis decision? It was in 2018. March 29, 2018, go ahead. But the amended complaint was in February of 2018. Yes, because not waiting to see what happened, just to be safe, I had made changes to what I do with my complaints based on the district court decision. I didn't see the point of waiting, to see how it came out. If it's something that's easy for me to fix, in my opinion, it just made sense to, you know, be more specific or general, so to speak. Makes more sense that you knew that there had been remedial work done. What? If you want to defeat it. I mean, the timing of all this is very suspicious. The only change in the amended complaint was to add nominal damages. There was no change to the assertions with respect to what the architectural barriers were. So, this wasn't, that amendment wasn't to say, oh, I think you screwed up on your remediation, and here's how. This argument with respect to the accessible route was in the original complaint. I thought the amended complaint added a claim for an injunction directing the defendant to, quote, make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA. That was in the first complaint as well. The only thing that was added to the amended complaint was an additional request for nominal damages. There was literally one change, one line, at the end of the addendum asking for nominal damages. What you just cited was in the original complaint as well. The only thing added was a sentence right above your name, right? I'm sorry, that the court awarded nominal damages pursuant? Yeah. The sentence, that's the only thing you changed? That was the only thing that changed between the two. Right above the signature, is what I mean. Yeah, that and the signature date and saying it was an amended complaint. And summary judgment was, factually now, summary judgment was resisted based upon the measurements in your attorney expert's opinion, or report, that did not opine regarding the slope. It did opine regarding the slope. It didn't say 10.86. It just said the measurements, right? It provided a measurement that exceeded the 1 to 10 that is required. And Holiday clearly understood what was being said because their own expert also measured there and acknowledged that that measurement, if they had been able to reproduce it, would be non-compliant. Why couldn't they reproduce it? I don't know. We weren't allowed to watch their... Has Mr. Hansmeier now been disbarred? The Mr. Hansmeier that... Your attorney expert, yeah. He's not an attorney, and he's not the person that was disbarred. They have the same last name, but they're not the same person. I thought he was described as an attorney expert. No. Okay. So it's not the same person. It's not the person that was disbarred. Somebody else. Same last name. Related? What? Related? Yes. Brother? Yes. So it's not clear, for example, because we don't have photographs of measurements. It's not clear, for example, did the Holidays expert not measure in the same place, the exact same place. Because although Holiday's attorney was able to be present for the Mr. Hansmeier's taking of measurements, we were not present when they took theirs, so we have no way to know why he was unable to reproduce it. But the point is, for summary judgment, that measurement is sufficient to create a genuine issue of material fact. And I'll reserve the remainder for rebuttal. Thank you. May it please the Court. My name is Tamara Novotny, and I represent Holiday Station Stores as well as Lindale Terminals. The basic issue on appeal is whether Hillshine provided Holiday with proper notice of his intent to assert a claim regarding a curb ramp flare issue. Well, why isn't, if you allege an accessible route, why isn't everything that's in that route, everything that makes up an accessible route under the ADA, why isn't that sufficient to give you notice? I think there are two responses to that. First, as you were asking counsel earlier regarding the definition that is found in the ADA Guidelines 402.2, it specifically excludes curb ramp flares from an accessible route. It explains that an accessible route shall consist of many different components, but a curb ramp is part of an accessible route, but the flared sides, and that is what is at issue here, is expressly called out as being excluded from an accessible route. So an allegation and a complaint about an accessible route cannot possibly provide notice of something that is excluded from that guideline definition. And I'll ask you to help me understand it as well, because then I, if they're excluded, why then we have a whole section, though, on how to deal with the ramps and the flares. So I guess I'm still a little puzzled as to why curb ramps, excluding the flared side, what, so that means you could have as flared of a side as you want and it's still an acceptable route? Is that your position? My, I mean, certainly there are guidelines with respect to what the slope should be for the flared sides. My point is their entire argument as to how Holiday supposedly had notice of this curb ramp flare issue is based on their part of the complaint referring to an accessible route and being in violation of section 206.2.1. My point is if you are going to tell us that referring to an accessible route should somehow tell us that you're asserting a claim for a curb ramp flare, and not only is a curb ramp flare not part of an accessible route, And that's, and I'm sorry to interrupt, but that's the part I don't understand. So you're saying that the curb ramp flares are irrelevant in whether a route is accessible? If you look at the way the guidelines read, I would say yes. They are excluding it from what is going to be considered within an accessible route. So they can be anything? Not necessarily that they should be anything, and if you want to make an issue of the curb ramp flare, and this goes to the heart of the issue, you should provide notice that you are asserting a claim for a curb ramp flare. You can put those words into your complaint. You can make reference to 406.3, which is the specific guideline that talks about curb ramp flares. The issue here is you don't see reference to 406.3 anywhere in the complaint. So is the curb ramp flare issue unique in the sense that any other component of the accessible route that you, that Holiday, in the process of trying to remedy this and make an accessible route, created another problem? Did something that made it not accessible in some other fashion, another slope or another angle? That would be included in accessible route, but the only thing we're really looking here that would not give you notice of is curb ramps, is the flared sides, because that's expressly excluded. Anything else would be a component of an accessible route? Well, I also disagree that simply looking at that particular allegation in isolation is providing proper notice of much of anything. You can't read this allegation in isolation from the rest of the complaint, which is what I think Hillshine would require this court to do. When Holiday got this complaint, or the amended complaint, it very clearly set out the three issues that he encountered at the store and the three issues that he was asking Holiday to address. That was that there was an access aisle on an incline in violation of 502.4. There was a curb ramp that projected into a parking space in violation of 403.5.1. And then there was a sidewalk near the exit that contained obstructions blocking access over to another ramp and the parking spaces in violation of 206.2.1. It's that last allegation that Hillshine now wants to say isn't based on the actual facts in the very complaint, but now it's based on this separate curb ramp flare issue and a separate provision of the guidelines. My point is not necessarily that there would need to be compliance with the curb ramp flare. My argument is, again, if Mr. Hillshine, when he is on notice of that potentially being an issue, and perhaps more importantly, when Hillshine makes a decision that he is going to assert a claim and seek relief for the curb ramp flare, he needs to provide Holiday with notice of that. There needs to be a pleading where he sets that out. I'm not arguing that that has to be stated in some exquisite, great detail, but certainly stating that I'm alleging a curb ramp flare violation or violation of 406.3 is an appropriate method of providing notice. They state throughout their brief that Holiday got notice in part from, apparently, their expert disclosure. That's simply not true if you've looked at that expert disclosure. First, their expert inspected the store in March of 2018, and he took these various measurements. Seven weeks later, on May 2nd, he serves his expert disclosure, which happened to be one day after not only the expert disclosure deadline, but the discovery deadline had run. You can look at that entire disclosure. You can read it front to back, back to front, and what you don't see stated anywhere is that any of those measurements were supposedly still in violation of the ADA or the guidelines, and that includes paragraph 21, which specifically talks about the curb ramp flare. It just lists measurements. There is certainly nothing in that expert disclosure that indicates that Hilsheim had any intent of making a claim based on any of the measurements that were set out. And so both the expert disclosure is silent as to this issue, and so is Hilsheim. The very first time that Hilsheim actually tells Holiday that it is asserting that this curb ramp flare measurement was an issue, that he intended to make it an issue, was in his opposition memorandum that was served in September of 2018,  certainly in those six months, Mr. Hilsheim could have provided notice. He could have sought to amend his complaint to identify this curb ramp flare as being an issue, as being something that he was seeking relief for, and he failed to do so. This case, I think, is on point with the Davis v. Anthony Inc. case from 2018, which has already been mentioned and which at least two of your honors are quite familiar with. The same is true. In that case, the complaint as it was drafted included allegations of specific issues and violations of the ADA guidelines. The business in that case likewise addressed those three specific issues. This court then correctly held that the plaintiff could not avoid a finding of mootness by then pointing to an unasserted claim about the slope of the new spaces and a claim which was based on an ADA guideline provision that was not included in the complaint. This case is no different. The complaint set out the three specific complaints that Hilsheim raised. Holliday then addressed those three specific issues. There's no claim here that the access aisle is any longer on an incline. There's no longer any allegation that the curb ramp projects into a parking space. That was addressed. And there's no additional claim that the sidewalk now contains obstructions. That, too, was addressed by Holliday. So in your view, there was not a particular allegation of just a general non-accessible route? No. I mean, again, you have to read the complaint as a whole, not in isolation. If you look at the issues that Hilsheim raises and talks about in the factual background section of the complaint, those then form the basis for the specific factual allegations. And you can put them next to each other and see what the allegations that are being claimed. The access route is clearly in reference to the sidewalk having obstructions on it when you read it in the complaint. But clearly what you don't see anywhere in the complaint is anything about a curb ramp flare or about 406.3. All of the other allegations are very specific. If I recall correctly in the Davis case, and I might get this backwards, but the complaint referred to 502.4, for example, and the new claim was based on 502.2 or vice versa. And this court recognized those are two very different things. One does not put someone else on notice of the other. So here when they're specifically relying on that reference to an accessible route in violation of 206.2.1, that cannot be notice of a violation of 406.3. I would hope that we can agree that those are two different numbers, two different provisions. And they don't include the same thing. I think if you look at 402.2, again, that specifically excludes the curb ramp flares. And I know counsel has offered, I'll say it's an unsupported explanation for why that language is there, but nevertheless their explanation is, well, a business is supposed to understand that a curb ramp flare is not supposed to be part of an accessible route. They don't want wheelchair users to have to use the curb ramp flare as an accessible route. Well, I think that simply underscores Holliday's position. If a business should understand an accessible route does not include a curb ramp flare from a uses standpoint, should they not be able to have that same understanding when they're reading a pleading? A pleading that asserts a violation of an accessible route cannot possibly encompass or state a claim for something, the curb ramp flare, that is under the guidelines not included in that very item. Now, I don't know. Can I ask just quickly, the curb ramp flares, were those adjusted or modified during the remedial efforts? Or are they just exactly the same as they were at the time of the complaint? It's just now that you've reconfigured routes, they become an issue. And I know there were rather extensive modifications made, so I don't know specifically if they were or were not changed. I know counsel indicated that she understood that. I can't understand your answer. I'm sorry. There were extensive modifications made to the parking lot, and I don't know specifically whether the curb ramp flares were specifically modified as part of that. I heard counsel indicate that it was her understanding that the curb ramp flares were the same as they were when she first sued this case out. So certainly those measurements seemingly could have been taken at the outset and included in the complaint if it was an issue. Again, Mr. Hilsheim didn't seem to believe they were an issue, so it was not included in the complaint and not something that Holliday was on notice of. Now, I know that the second issue that is raised on the appeal is the issue of equitable nominal damages. I know counsel did not have an opportunity to discuss that, so I don't know if the court wants to entertain any additional arguments or not. I think it's a relatively straightforward argument as well. The simple argument is that the cases, the Shaver and the Byer cases, that counsel has relied on to support this equitable nominal damages argument were cases that considered Title I, which deals with employment, not Title III, which deals with public accommodations. And the district court correctly recognized, just as Hilsheim has previously, that that is something that matters. Title I and Title III incorporate different language into their remedy provisions, and it's that different statutory language that compels different results and limits the remedies that a court can provide. And Hilsheim has not offered any authority saying that a court is not bound by the remedies that the legislature chose to include in its remedy provision. The Title I remedy provision specifically allows a court to award any other equitable relief as the court deems appropriate. That language is entirely absent from Title III's remedy provision. And obviously the legislature could have included that in Title III had it chosen to do so. So this really is not an argument. When you look at the cases issued from the Eighth Circuit that have considered remedies available under Title III, they have all held consistent with the statutory language of Title III that only injunctive relief is available. That's the Stubbins case, the Wadjuski case, the Steger case, and you can also look at the statute itself, 12188 subpart A2, which again talks about injunctive relief for violations of the very statute that deals with the failure to remove architectural barriers. So I think it's pretty clear the cases have already been decided. The relief is limited to injunctive relief. As much as counsel may want to hope that you can get additional relief, the cases and the statute simply do not support it. So unless there's any additional questions, I would respectfully request that the court affirm the district court's decision below in its entirety. Thank you. Counsel, since opposing counsel opened up the nominal damages issue, I'll give you two minutes of rebuttal for that. Thank you, Your Honor. Before talking about that, just briefly with respect to the mootness issue, again, opposing counsel was talking about the specific facts and with respect to the accessible route. And this goes back to what I was talking about where Holiday had a few options for how they were going to fix that accessible route, and my client had no way to know which way it was going to be. There were two possible accessible methods for making an accessible route, and they chose the one that went down the curb ramp. We had no idea that that was going to be what they chose to block off the bottom of that. Instead of simply removing the signs that were blocking the path back from the exit route to the curb ramp that my client would take up to the entrance. So it's simply not something that could have been in the original complaint in a more specific manner because my client could not know that that was the choice. You mean in the amended complaint in a more specific manner? Right. Well, in the original complaint or at the time, the idea being at the time that he filed that he would have known that that happened, and there's simply no way that he could have done that. With respect to the nominal damages and equitable relief, 42 U.S.C. 2000A-3A, which is part of 12188A, talks about not just objective relief but other orders for preventative relief. And nominal damages is the type of equitable relief that could discourage discrimination, in this case, from happening again because Holiday has refused to acknowledge that there ever was a problem or, frankly, in a situation like Holiday at other locations. This is the third time that Mr. Hilsheim has been before the Eighth Circuit against Holiday Station stores. They have a systematic problem with not bringing their locations into compliance with the ADA until after they're sued. This is the type of case where, for preventing discrimination at other locations, nominal damages would be perfect. Thank you. Thank you, counsel. This has been thoroughly and well-briefed and argued, and we'll take it under advisement.